# IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE                                           : CHAPTER 11
                                                :
WALDO ALFARO                                    :
                                                :
           DEBTOR(S)                            : BANKRUPTCY NO. 11-14580

# OPINION

BY: STEPHEN RASLAVICH, UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

A hearing on the confirmation of the Debtor's Third Amended Plan was held on November 6, 2013. Objections to the plan were filed by JP Morgan Chase Bank, N.A. (JP Morgan) and raised orally by the United States Trustee (UST). After the hearing the Court took the matter under advisement. For the foregoing reasons, confirmation of the plan will be denied.[1]

*Confirmation*

The Third Circuit has set forth the basic framework for confirmation:

> Confirmation of a proposed Chapter 11 reorganization plan is governed by 11 U.S.C. § 1129. A court will confirm a plan if it meets all of the requirements set out in section 1129(a). [Among these requirements is] that the plan be consensual, with unanimous acceptance by all of the impaired classes. 11 U.S.C. § 1129(a)(8). If the plan is not consensual, a court may still confirm as long as the plan meets the other requirements of section 1129(a), and "does not discriminate unfairly, and is fair and equitable" as to any dissenting impaired class. 11 U.S.C. § 1129(b)(1); [citation omitted].

---

[1] Because this matter pertains to confirmation of a plan it is within this Court's core jurisdiction. *See* 28 U.S.C. § 157(b)(2)(L)

*In re Armstrong World Industries, Inc.*, 432 F.3d 507, 511–12 (3d Cir.2005); *see, e.g., LaSala v. Bordier et Cie*, 519 F.3d 121, 133 n. 16 (3d Cir.2008) ("For a plan to be approved, either (1) each impaired class must accept the plan, or (2) the bankruptcy court must approve the plan as 'fair and equitable' despite a class's disapproval. 11 U.S.C. § 1129(b).")  The burden of proving that a plan complies with the code is on the plan proponent.  *In re Kreider*, 2006 WL 3068834, at *1 (Bkrtcy.E.D.Pa., Sept. 27, 2006) *In re Washington Mut., Inc.*, 2011 WL 57111, at *7 (Bkrtcy.D.Del., Jan. 7, 2011).

*Debtor's Position*

The Debtor requests confirmation under § 1129(a).  Transcript of Hearing, 11/6/13 (T-) 6.  Among the requirements of that subsection is that the Debtor has obtained the acceptance of all classes of his plan.  *See* 11 U.S.C. § 1129(a)(8) (requiring that each class accept the plan or that the plan not impair such class).  The Debtor maintains that all classes, impaired or otherwise, have accepted the plan.  In support of that contention, he filed a Report of Plan Voting.  That report, however, does not contain *express* acceptance of each such class.  What the report reflects is that no creditor in the case has voted either for or against the plan.  Even so, says the Debtor, acceptance of the plan may be inferred from the failure to vote.  It is on that basis that the Debtor asks for entry of an order confirming the Third Amended Plan.  The UST questioned whether that premise is the law in this circuit.  T-4.

*Implied Acceptance*

The central issue before the Court is whether a failure to vote on a plan of reorganization can be construed as acceptance.  In support of this proposition, the Debtor relies primarily on a Tenth Circuit decision, *In re Ruti-Sweetwater*, 836 F.2d

1263 (10th Cir. 1988). There, the Tenth Circuit held that a creditor who did not vote on a Chapter 11 plan and who also did not object to confirmation was deemed to have accepted it. In affirming the lower court's ruling, the Tenth Circuit explained that "to hold otherwise would be to endorse the proposition that a creditor may sit idly by, not participate in any manner in the formulation and adoption of a plan and thereafter raise a challenge for the first time." 836 F.2d at 1263. The Debtor finds additional persuasive support in the Third Circuit's citing of *Ruti-Sweetwater* with approval. *See In re Szostek*, 886 F.2d 1405, 1413 (3d Cir. 1989) (deeming creditor in Chapter 13 proceeding to have accepted plan through its failure to make a timely objection).

This Court finds these decisions neither controlling nor persuasive. In *Ruti-Sweetwater*, the creditor neither voted nor objected to confirmation. Here, JP Morgan *has objected* to confirmation. That fact makes it difficult to infer that JP Morgan accepts the plan. *Cf. John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Assoc. (In re Route 37 Business Park Assoc.)*, 987 F.2d 154, 159 (3d Cir. 1993) (discussing in the context of classification that plan proponent should not "mold outcome of voting" without providing a "reasonable method for counting votes"). Neither is *Szostek* persuasive. *Szostek* involved a Chapter 13 proceeding. Under that chapter of the bankruptcy code, voting does not occur; plans are either objected to or the proposed treatment binds the affected creditor. *See In re Fillion*, 181 F.3d 859, 862 (7th Cir. 1999) ("Creditors do not vote on a Chapter 13 plan.") Moreover, the creditor in *Szostek*, like the creditor in *Ruti-Sweetwater*, failed to file an objection. That is not case with the instant proceeding. Accordingly, the decisional authority offered by the Debtor is not persuasive. The Court construes the objection of JP Morgan to constitute a rejection of the plan. As a result,

the Debtor has not obtained the acceptance of all classes as required by § 1129(a)(8)(A). Accordingly, the request for confirmation under § 1129(a) is denied.

*Cram Down*

Bankruptcy courts have an independent duty to ensure that a plan of reorganization meets all of the requirements of confirmation, even in the absence of an objection by a party in interest. *See In re Union Meeting Partners*, 165 B.R. 553, 574 (Bankr.E.D.Pa.1994). That leaves the Court with the task of determining whether the plan is otherwise confirmable under subsection (b) of § 1129:

> Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section *other than paragraph (8)* are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is *fair and equitable,* with respect to *each class of claims* or interests *that is impaired* under, and has *not accepted*, the plan.

11 U.S.C. § 1129(b)(1) (emphasis added). This latter type of confirmation is also called a "cram down," as the court can cram a plan down over the objection of an impaired class. *Armstrong, supra*, 432 F.3d at 512 citing Kenneth N. Klee, *All You Ever Wanted to Know About Cram Down Under the New Bankruptcy Code*, 53 Am. Bankr.L.J. 133 (1979). As to JP Morgan, this analysis will be two-dimensional because of the nature of its claim (secured) and the plan's proposed treatment of its claim (strip down): the plan proposes to bifurcate its claim into a secured and an unsecured component. That leaves JP Morgan with two claims, both of which must be treated fairly and equitably if the Debtor is to confirm its plan over their rejection.

*Secured Claim*

With regard to secured claims, fair and equitable treatment requires:

> **(i)(I)** that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
>
> **(II)** that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

11 U.S.C. § 1129(b)(2)(A). Here the plan proposes that JP Morgan shall retain its lien but it also intends to strip down that lien from $722,000 to $300,000. That lower secured amount will be paid over 30 years at 4% interest. The Debtor, however, has the initial burden of rebutting the presumptive validity of the secured claim's value. *See In re Heritage Highgate, Inc.*, 679 F.3d 132, 140 (3d Cir. 2012) (holding that).[2] Notwithstanding, the Debtor has offered no evidence demonstrating that the value of the JP Morgan's lien is any less than what the claim says it is. Accordingly, the Court finds that the proposed treatment of the secured claim of JP Morgan is neither fair nor equitable.

*Absolute Priority*

Yet even if the Debtor was able to modify that lien, the proposed treatment of the resulting deficiency would have to be treated fairly and equitably. Section 1129(b) goes on to provide that a plan treats dissenting unsecured claims fairly and equitably if:

---

[2] As to what is the appropriate rate of "cramdown" interest, the burden of proof is on the creditor. *See Till v. SCS Credit Corp.*, 541 U.S. 465, 478, 124 S.Ct. 1951, 1961 (2004)(adopting prime plus formula for cramdown interest rate and placing burden of proving such rate on creditor who has readier access to financial information probative of what the adjustment upward from the prime rate should be); *see also In re Prussia Assoc.*, 322 B.R. 572, 591 (Bkrtcy.E.D.Pa.2005)

>    **(i)** the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
>
>    **(ii)** the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.

11 U.S.C. § 1129(b)(2)(B). As explained by the Supreme Court, "a plan may be found to be fair and equitable only if the allowed value of the claim is to be paid in full, § 1129(b)(2)(B)(i), or, in the alternative, if 'the holder of any claim or interest that is junior to the claims of such [impaired unsecured] class will not receive or retain under the plan on account of such junior claim or interest any property,' § 1129(b)(2)(B)(ii)." *Bank of America National Trust and Sav. Ass'n v. 203 North LaSalle Street P'ship*, 526 U.S. 434, 441–42, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1999). Subparagraph (B) thus codifies what is known as the "absolute priority rule." *Armstrong, supra*, 432 F.3d at 512.

The "absolute priority rule" applies in individual Chapter 11 cases. *See In re Brown*, 498 B.R. 486, 506 (Bkrtcy.E.D.Pa. 2013) (rejecting the position that the 2005 amendment to the Code abrogated the rule in individual Chapter 11 cases). The UST maintains that this plan violates the rule because unsecured creditors are impaired, yet the Debtor is retaining property of the estate.[3]  *See* T-4.

The first element of the rule is that the unsecured creditors who will not be paid in full have dissented from the proposed treatment. Unlike the JP Morgan *secured*

---

[3] Importantly, the property which Debtor is proposing to retain is *prepetition* property of the estate. The 2005 amendments to the code except from the absolute priority rule a debtor's retention of *postpetition property and services*; that is, "property included in the estate under section 1115." *See* 11 U.S.C. § 1129(b)(2)(B)(ii).

6

claim—which is separately classified—the JP Morgan deficiency claim is included among other unsecured claims (Class 6). The Court must determine whether that class has accepted the plan. Despite what is reported as tacit acceptance in the report of plan voting, the Court finds that the unsecured class has not accepted the plan. A class accepts a plan when (1) the majority of those creditors who do vote vote in favor of the plan and (2) the dollar amount of the claims which vote in favor amount to two thirds of the total dollar amount of the voting claims. See 11 U.S.C. § 1126(c). Even if the Court were to construe the non-votes of that class as acceptances, that would satisfy only the numeric (i.e., majority) requirement for class acceptance. The other requirement is that two-thirds of the dollar amount of the claims that vote accept the plan. The inclusion of the deficiency claim of JP Morgan makes that impossible. After stripping down the JP Morgan secured claim from $722,000 to $300,000, an unsecured deficiency claim of $422,000 will result. The other unsecured claims total no more than about $20,000. Claims of unsecured creditors other than JP Morgan make up less than 5% of the total dollar amount of the unsecured class. That is less than the requisite two-thirds of the total of the dollar amounts of claims voting to accept the plan. This renders the unsecured creditor class to be a "dissenting class." The plan, however, proposes to pay these dissenting creditors less than in full ($30,000 over five years) while retaining prepetition property of the estate. Accordingly, the Court finds that it otherwise violates the absolute priority rule and so cannot be confirmed for that reason as well.

      An appropriate order follows.

By the Court

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated:  November 22, 2013